Filed 12/24/24  P. v. Banks CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B330973 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA347305) |
| v. | |
| LEON BANKS, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Gustavo N. Sztraicher, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant and appellant Leon Banks appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6 (former § 1170.95)[1] following an evidentiary hearing.

We affirm.

## FACTS AND PROCEDURAL BACKGROUND

I. *Facts*[2]

The La Brea Collective (Collective), a medical marijuana dispensary, had a metal security door that provided access from the sidewalk. Behind the security door was a "mantrap"—a secured room separated from the lobby. When a patient rang the outside doorbell, a security guard would open a flap in the metal door and ask for the patient's identification and medical marijuana recommendation. Upon verification of these documents, the patient was permitted to enter the dispensary through the lobby. Security cameras monitored the premises.

On the afternoon of October 1, 2008, Martin Chavero (Chavero) was working behind the displays in the dispensary when he heard the doorbell ring. On a security monitor, Chavero

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no substantive change. (Stats. 2022, ch. 58, § 10.) For simplicity, we refer to the section by its new numbering.

[2] At the conclusion of the section 1172.6 evidentiary hearing, the trial court ordered the People to submit relevant excerpts of the reporter's transcripts from defendant's 2011 trial. The facts summarized in this section are drawn exclusively from those excerpts.

saw two men pointing guns at the head of Noe Gonzales (Gonzales), the Collective's security guard. Each of the two men held Gonzales by an arm and escorted him through the lobby.

Seeing defendant come through the door into the dispensary, Chavero ran to a back office to lock the safe. Defendant grabbed Chavero by the shoulder, pointed a semiautomatic gun at him, and said, "'If you look at me, I'll kill you.'" Defendant pulled Chavero out of the office and pushed him to the ground of the dispensary. Defendant placed his knee on Chavero's back and started tying Chavero's right arm and wrist with zip ties.[3] Chavero heard two gunshots and then defendant say, "'S**t, we got to go. We got to go.'" Defendant ran to the lobby.

On the monitor, Chavero saw defendant and two other men struggling to push their way out the front metal security door. Defendant fired a shot through a glass window to the side of the security door. Defendant and his companions managed to push their way outside and six or seven additional gunshots rang out.

From a coffee shop across the street, James Hustead (Hustead) saw Gonzales standing outside of the Collective pushing its door shut while someone tried to push it open from the inside. Hustead saw defendant, holding a gun, reach out from inside and shoot. Gonzales started falling backwards and defendant fired three or four shots at him. The last struck Gonzales's head. Defendant fled on foot, followed by two other men.

Robert Simmons (Simmons) was driving past the Collective. He heard popping sounds and slowed down. He saw

---

[3] Chavero testified that zip ties were not used at the Collective for business or "laying around" there.

two men pushing back and forth on the front door of the Collective. Both men had guns and were trying to reach around and shoot at the other. Simmons heard gunshots. He eventually pulled over and walked up to the Collective, where he saw the body of one of the men on the sidewalk. Simmons identified the other man who had been shooting as defendant.

II. *Conviction and Sentencing*

In 2011, a jury found defendant guilty of the first-degree murder of Gonzales (§ 187, subd. (a); count 1), attempted second-degree robbery (§§ 664, 211; count 2), and second-degree commercial burglary (§ 459; count 3). As to the murder in count 1, the jury found true the special-circumstance allegation that it was committed in the course of committing an attempted robbery (§ 190.2, subd. (a)(17)). As to all counts, the jury also found true allegations that the offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)); that a principal personally and intentionally discharged a firearm causing death (§ 12022.53, subds. (d) & (e)); and that defendant personally used a firearm (§ 12022.53, subd. (b)). The jury found not true the allegations that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), causing Gonzales's death (§ 12022.53, subd. (d)).

The trial court sentenced defendant to a prison term of life without the possibility of parole on count 1. The court imposed and stayed sentences on counts 2 and 3.

Lovie Troy Matthews (Matthews), who acted as a getaway driver for the attempted robbery, was tried with defendant.[4]

---

[4] Matthews is not a party to this appeal.

4

(*People v. Banks* (2015) 61 Cal.4th 788, 794, 796 (*Banks*).)  The jury found Matthews guilty of murder, attempted robbery, and burglary, and found true, inter alia, the felony-murder special circumstance.  (*Id.* at p. 797.)  Matthews was also sentenced to life imprisonment without parole.  (*Id.* at p. 794.)

III.  *Direct Appeal*

On direct appeal, we ordered amendments to the abstracts of judgment (related to issues not relevant here) and otherwise affirmed the judgments as to defendant and Matthews.  (*People v. Banks* (Aug. 29, 2013, B236152) [nonpub. opn.], p. 42, revd. in part (2015) 61 Cal.4th 788.)

The California Supreme Court granted Matthews's petition for review but denied defendant's petition.  In *Banks*, *supra*, 61 Cal.4th at page 794, the court held that the evidence was insufficient to support the felony-murder special circumstance finding as to Matthews.  The opinion in *Banks* did not affect the judgment against defendant.[5]

IV.  *Section 1172.6 Petition and Evidentiary Hearing*

In July 2021, defendant, represented by counsel, filed a petition for resentencing pursuant to section 1172.6.[6]  Finding that defendant had made a prima facie showing for relief, the trial court held an evidentiary hearing on August 12, 2022, where the court heard argument from the People and defense counsel

---

[5]    Defendant's name still remained in the caption of *Banks*, *supra*, 61 Cal.4th 788 because our Supreme Court "generally use[s] the name appearing in the Court of Appeal's decision[.]" (*People v. Rutterschmidt* (2012) 55 Cal.4th 650, 652, fn. 1.)

[6]    Defendant had previously filed a section 1172.6 petition in April 2019, which was denied.  The earlier petition is not at issue in this appeal.

5

but neither side presented new evidence.  At the conclusion of the hearing, the trial court ordered the People to submit an "exhibit book" that included the excerpts of the trial transcripts relied upon by the People.  The People submitted the exhibit book without objection on September 2, 2022.

V.  *Trial Court's Ruling*

On March 10, 2023, the trial court issued a written order denying defendant's section 1172.6 petition.  Analyzing the evidence under the factors set forth in *Banks, supra*, 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the court concluded that, "notwithstanding the changes to sections 188 and 189, [the People] proved beyond a reasonable doubt that [defendant] is not eligible for resentencing under section 1172.6 because he was a major participant who acted with reckless disregard for human life."

VI.  *Appeal*

This appeal ensued.

## DISCUSSION

Defendant argues that there is insufficient evidence to support the trial court's findings that he is guilty of felony murder as a major participant in the attempted robbery who acted with reckless indifference to human life.  We disagree.

I.  *Background Legal Principles*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) substantively amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting[] and limit[] the scope of the felony-murder rule.  [Citations.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  "As relevant here, the amended murder statute now limits felony-murder liability to: (1) 'actual

6

killer[s]' (§ 189, subd. (e)(1)); (2) those who, 'with the intent to kill,' aided or abetted 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2)); and (3) 'major participant[s] in the underlying felony' who 'acted with reckless indifference to human life' (*id.*, subd. (e)(3))." (*People v. Wilson* (2023) 14 Cal.5th 839, 868–869 (*Wilson*).)

Senate Bill No. 1437 also added what is now section 1172.6, which provides a procedural mechanism for defendants who could not be convicted of murder under the amended laws to petition for retroactive relief. (*Lewis*, *supra*, 11 Cal.5th at p. 959.) Upon the filing of a properly pleaded petition for resentencing, the trial court must conduct a prima facie analysis to determine the defendant's eligibility for relief. (§ 1172.6, subds. (b)(3) & (c); *People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, at pp. 957, 960.) If the court determines that the requisite prima facie showing has been made, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c); *Wilson*, *supra*, 14 Cal.5th at p. 869.)

"At the evidentiary hearing following issuance of an order to show cause, the superior court acts as an independent fact finder, and the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under California law following Senate Bill No. 1437's amendments. [Citations.] The petitioner and the prosecutor may offer new or additional evidence, and the court may consider evidence 'previously admitted at any prior hearing or trial that is admissible under current law,' including witness testimony. [Citations.]" (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1065–1066 (*Hill*).)

7

II. *Standard of Review*

On appeal from the denial of a section 1172.6 petition following an evidentiary hearing, we review the trial court's findings for substantial evidence. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "In conducting our review, we consider the whole record in the light most favorable to the . . . court's findings [citation], and we presume "'every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.'" [Citation.] We ask 'whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt.' [Citation.] And based on this whole record review, we "'determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.'" [Citation.]" (*Hill, supra,* 100 Cal.App.5th at p. 1066.)

III. *Substantial Evidence Supports the Trial Court's Findings*

Substantial evidence supports the trial court's findings, beyond a reasonable doubt, that defendant was a major participant in the attempted robbery and that he acted with reckless indifference to human life.

A. <u>Major participant</u>

In *Banks, supra,* 61 Cal.4th at page 803, our Supreme Court identified the following factors that "may be weighed in determining the ultimate question, whether [a] defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]": (1) the defendant's role "in planning the criminal enterprise that led to one or more deaths"; (2) his role "in supplying or using lethal weapons"; (3) his awareness "of

8

particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) his presence "at the scene of the killing" and thus whether he was "in a position to facilitate or prevent the actual murder"; and (5) his actions after the use of lethal force. "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid*.)

Considering these factors as a whole, we conclude that substantial evidence supports the finding that defendant was a major participant in the attempted robbery that led to Gonzales's death.

### 1. *Planning*

During the commission of the attempted robbery, defendant possessed and used a firearm and zip ties (which were not used at the Collective for business or simply "laying around"). He thus came prepared to subdue the Collective's employees with force or threat of force, which leads to the reasonable inference that he had some involvement in the advanced planning of the robbery. (See *In re White* (2018) 21 Cal.App.5th 18, 30, affd. (2020) 9 Cal.5th 455 [substantial evidence may consist of inferences if they are the product of logic and reason and rest on the evidence].)

Defendant faults the trial court with relying on "three pieces of circumstantial evidence that showed [defendant] 'had some hand' in planning the robbery"—namely, (1) "'a medical marijuana authorization issued to [defendant] with a photocopy of his identification . . . recovered from the scene'"; (2) "evidence . . . that [defendant] and the getaway driver called each other multiple times before and after the robbery"; and (3) "evidence . . . that the getaway driver was later arrested

driving [defendant]'s car." Defendant does not contend that this evidence was not presented at his 2011 trial; rather, he argues that the trial court improperly drew these facts from the factual summary contained in *Banks*, *supra*, 61 Cal.4th 788. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing"].)

The People concede that the evidence relied upon by the trial court with respect to planning "was not included in the excerpts of the record in the evidence book submitted by the People" and that "the court appears to have relied in part upon the factual summaries" in the prior Court of Appeal and Supreme Court opinions.

Assuming, arguendo, that the trial court did not independently review trial transcripts contained in its own files to verify the evidence it cited regarding planning, its error in relying on the appellate opinions' factual summaries was harmless under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (See *People v. Hall* (2024) 104 Cal.App.5th 1077, 1095 [under the *Watson* harmless error standard, "we reverse only if, viewing the record in its entirety, we are of the opinion that it is more likely than not the defendant would have achieved a better result in the absence of the error"]; *People v. Vance* (2023) 94 Cal.App.5th 706, 714 [applying *Watson* error analysis to denial of § 1172.6 petition based on appellate court's prior opinion].)

As set forth above, we have found substantial evidence, based *only* on the excerpts included in the People's exhibit book, that defendant played a role in planning the robbery. Given this evidence, combined with the substantial evidence regarding the

other *Banks* factors discussed below, it is not reasonably probable that the trial court would have reached a contrary conclusion regarding defendant being a major participant but for its reliance on the prior appellate opinions.

2. *Supplying or using lethal weapons*

Defendant was personally armed and, given that Gonzales was escorted through the Collective's lobby at gunpoint by two men with guns, defendant was aware that at least one of his associates was also armed. (See *People v. Montanez* (2023) 91 Cal.App.5th 245, 281 ["Because [the defendant] was present at the scene and in close proximity to his cohorts, a fact finder could reasonably infer he was aware of both weapons"].) Defendant brandished his firearm, pointing it at Chavero to effectuate compliance and to bolster his threat, "'If you look at me, I'll kill you.'" While no evidence was introduced that defendant supplied the firearms used by the group, he "was not a mere bystander when it came to the deadly weapons used during the robbery." (*In re Harper* (2022) 76 Cal.App.5th 450, 461 (*Harper*); see also *In re McDowell* (2020) 55 Cal.App.5th 999, 1011 (*McDowell*) [even in the absence of evidence that the defendant supplied the murder weapon, the fact that he "was himself armed with, and brandished, a deadly or dangerous weapon" weighed in favor of major participant finding].)

3. *Awareness of dangers posed by the crime*

Defendant's threat to kill Chavero—"'If you look at me, I'll kill you[]'"—while pointing a semiautomatic gun at him demonstrates that defendant was well aware of the lethal danger posed by the weapons used by the group and was willing to use such force to evade capture. Given defendant's own threat to use deadly force to prevent a witness from being able to identify him,

11

it should have come as no surprise to him that one of his associates would kill Gonzales, the Collective's security guard, to facilitate the group's escape. (See *Harper*, *supra*, 76 Cal.App.5th at p. 461 [the defendant "was clearly aware of the risk of death once the robbery was underway" based, in part, on one of his cohorts asking where she could find knives].)

4. *Proximity to the killing*

Defendant was one of the three men struggling to push their way out of the front metal security door. Disregarding any evidence that defendant discharged his weapon during this struggle or was the actual killer,[7] substantial evidence still shows that he was present at the time of the fatal shooting. (*In re Loza* (2017) 10 Cal.App.5th 38, 50 ["there may be significantly greater culpability for accomplices who are present"].) As the trial court explained, "once the group [wa]s struggling with Gonzale[s] at the security door to escape, it [wa]s foreseeable that one of the armed robbers w[ould] attempt to effectuate the escape by shooting at Gonzale[s]." Defendant, who was "in a position to . . .

---

[7] Because the jury found the allegations that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), causing Gonzales's death (§ 12022.53, subd. (d)), to be not true, we disregard (as did the trial court) all evidence that conflicts with those findings. (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 398 [holding "that a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented"]; see also *People v. Arnold* (2023) 93 Cal.App.5th 376, 391 [remanding for new § 1172.6 evidentiary hearing in which "the court shall not make any finding or rely on any evidence which contradicts the jury's finding that the personal use of a knife sentencing enhancement was not true"].)

prevent the actual murder" (*Banks*, *supra*, 61 Cal.4th at p. 803), failed to intervene to prevent the foreseeable violence.

Defendant points to evidence that he was not present when the first shots were fired and contends that he "arrived when the victim and the actual killer were already engaged in a shootout." Viewed in the light most favorable to the trial court's findings (see *Hill*, *supra*, 100 Cal.App.5th at p. 1066), the evidence indicates that Gonzales was not shot during the initial gunfire but, instead, in the midst of the later struggle that ensued while the group was attempting to escape from the Collective. Accordingly, we disagree with defendant's contention that he was in no position to intervene at or around the time of the fatal shooting. (See *McDowell*, *supra*, 55 Cal.App.5th at p. 1012 [even a brief opportunity to intervene weighed in favor of major participation finding].)

### 5. *Actions after the killing*

Finally, defendant did nothing to render aid to Gonzales after the shooting. Instead, he fled the scene, leaving Gonzales to die.

### B. Reckless indifference to human life

A defendant acts with reckless indifference to human life when he ""knowingly engag[es] in criminal activities known to carry a grave risk of death."' [Citations.]" (*Banks*, *supra*, 61 Cal.4th at p. 801.) In *Clark*, *supra*, 63 Cal.4th at pages 618–623, "our Supreme Court handed down a list of factors to consider in determining whether a defendant acted with reckless indifference to human life: (1) The defendant's use of, or awareness of the presence of a weapon or weapons; (2) The defendant's physical presence at the crime, and the opportunities to limit it and/or to aid the victim(s); (3) The duration of the

13

felony and restraint of the victim(s); (4) The defendant's awareness that an associate is likely to kill; and (5) The defendant's efforts to minimize the risk of violence during the course of the felony.  [Citation.]" (*Hill*, *supra*, 100 Cal.App.5th at pp. 1074–1075.)

"As with the factors relevant to major participation, no one factor is necessary, nor is any necessarily sufficient." (*People v. Saibu* (2022) 81 Cal.App.5th 709, 740; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677.)  "And '[b]ecause the major participant and reckless indifference elements often "'significantly overlap'" [citations], this list of factors also overlap[s] with those . . . identified in connection with the major participation inquiry in *Banks*.' [Citation.]" (*Hill*, *supra*, 100 Cal.App.5th at p. 1075.)

Applying these factors to the instant case, we conclude that substantial evidence supports the finding that defendant acted with reckless indifference to human life in carrying out the attempted robbery.

### 1. *Use or awareness of weapons; number of weapons*

Defendant was personally armed and knew that at least one of his associates was also armed.  Not only did he know of the presence of at least two weapons at the scene, but he actually pointed his weapon at a Collective employee to bolster his threat to kill him and thus effectuate compliance.  Defendant "was willingly involved in the violent manner in which the [attempted] robbery took place." (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1089 (*Bascomb*).)

### 2. *Presence at the crime; opportunity to intervene*

Defendant was present when Gonzales was fatally shot yet failed to intervene to prevent the killing or to render aid. Defendant attempts to minimize his culpability by emphasizing

that he was not present during the first round of shooting. But this does not negate the evidence that defendant failed to exercise any restraining influence when he was present for the second round of shooting during which Gonzales was killed. (See *Clark*, *supra*, 63 Cal.4th at p. 619 [underscoring the particular significance of proximity to the murder].) Nor did defendant attempt to help Gonzales after the shooting, "but instead fled." (*Bascomb*, *supra*, 55 Cal.App.5th at p. 1089.)

### 3. *Duration of the felony*

While the exact duration of the attempted robbery is not reflected in the admitted evidence, it was of sufficient length to allow the assailants to overcome the Collective's security measures, for defendant to threaten Chavero at gunpoint and partially restrain him with zip ties, and for a deadly struggle to occur at the front security door as defendant and his associates attempted to evade capture. "The rapidity of this sequence does not make [defendant] less blameworthy." (*In re Parrish* (2020) 58 Cal.App.5th 539, 544; see also *People v. Mitchell* (2022) 81 Cal.App.5th 575, 594 ["The duration was brief. This was because the frightened victim tried to flee. This does not show [the defendant] had compassion or regard for the victim"].)

### 4. *Awareness of associates' likelihood to kill*

The record contains no evidence that defendant had any specific knowledge of his associates' propensity for violence or likelihood of using lethal force. Defendant was, however, aware that at least one of them was armed—in addition to himself—and had gained entry to the Collective by threat of deadly force. This indicates an awareness of the risk that death would result.

5. *Efforts to minimize risk*

Defendant's actions increased rather than minimized the risk of violence. Armed with a semiautomatic weapon, defendant attempted to rob a marijuana dispensary with a dedicated security guard in the middle of the afternoon, when it was foreseeable that patients and numerous employees would be present. This indicates a strong degree of reckless indifference to human life. (See *McDowell*, *supra*, 55 Cal.App.5th at p. 1013 ["it was foreseeable that customers or others could be present [at home invasion robbery of a drug dealer], even early in the morning, and that either the dealer himself or his customers might be armed or high and thus more likely to resist"].)

## DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:



_____, J.
CHAVEZ



_____, J.
RICHARDSON


16